**FILED**

**MARCH 4, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT
#6206607

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTTHEIRN DISTRICT OF ILLINOS
EASTERN DIVISION

| | | |
|---|---|---|
| Lilly Jones and Michael Jones | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| Stevie Porter, Harlan Hanbrough, | ) | |
| Aurora Loan Services  and Mortgage | ) | |
| Electronic Registration Systems, Inc. | ) | |
| | ) | |
| Defendants. | ) | |

**08 C 1310**

**JUDGE HIBBLER
MAGISTRATE JUDGE SCHENKIER**

## COMPLAINT

Plaintiffs, Lilly Jones and Michael Jones seek to bring this action to secure redress in connection with an Equitable Mortgage transaction in which they was charged 18 percent on a mortgage loan.  Plaintiffs seek to rescind the Mortgage and Deed and recover damages for violation of the Truth In Lending Act, 15 U.S. C. §1601 et seq.  ("TILA"), as amended by the Home Ownership and Equity Protection Act, 15 U.S.C. §§1602(aa) and 1639 ("HOEPA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226.  Plaintiffs also seek relief under state statutory and common law.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), 1367 (supplemental jurisdiction) and 15 U.S.C. §1640 (TILA).  The Court has Diversity Jurisdiction pursuant to 28 U.S.C. §1332.

1

**BACKGROUND**

1. The Plaintiffs, Lilly Jones and Michael Jones, are the owners of and resided in the property commonly known as 7538 S. Wolcott, Chicago, Illinois, hereinafter "Plaintiffs' residence".

2. The deed and mortgage to the Plaintiffs' residence was solely in the name of Lilly Jones.

3. Michael Jones, as her husband, maintained an equitable interest in the home.

4. Michael Jones, is currently disabled due to a medical condition diagnosed as Sleep Apnea.

5. The Plaintiffs purchased their home in 1995 for $65,000.00.

6. The Plaintiffs' home currently has a value currently estimated at $180,000.00.

7. In June of 2004, it was discovered that the Plaintiffs were delinquent to the Cook County Assessor's Office for unpaid real estate taxes.

8. The Estimate of Redemption for the back taxes was approximately $5,100.00.

9. The Plaintiffs were approached by the Defendant, Stevie Porter, a purported real estate investor.

10. The Plaintiffs had no prior affiliation with the Defendant, Stevie Porter, hereinafter "Porter".

11. Porter loaned the Plaintiffs $5,100.00 on June 29, 2004.

12. Porter then mandated that the Lilly Jones execute a Promissory Note to repay the $5,100.00 loan (Exhibit "A").

13. The loan was to be repaid within thirty six (36) months, on or before August 1, 2007 at an 18% interest rate.

14. The loan also carried a late fee of $75.00 if the payment was submitted after the 10th day of any month.

15. Porter also had the Lilly Jones execute a Security Agreement which collateralized the Plaintiffs' residence (Exhibit "B" consisting of 3 pages).

16. Porter also mandated that the Lilly Jones sign a General Power of Attorney dated June 29, 2004 (Exhibit "C").

17. Unknown to the Plaintiffs, Porter caused the General Power of Attorney to be recorded on July 26, 2004 as document number 0420848139 (Exhibit "D").

18. Porter also mandated that the Lilly Jones sign a Quit Claim Deed dated June 29, 2004 (Exhibit "E").

19. Unknown to the Plaintiffs, Porter caused the Quit Claim Deed to be recorded on July 26, 2004 as document number 0420848140 (Exhibit "F").

20. The Plaintiffs were unsophisticated and in the real estate arena and did not have a true appreciation for the repercussions of the Quit Claim Deed and General Power of Attorney.

21. The Plaintiffs trusted Porter and believed that he had their best interest at heart.

22. The Plaintiffs were operating on the assumption that Porter would cancel the Promissory Note upon full payment of the $5,100.00 loan.

23. Porter never disclosed the fact that he would sell the Plaintiffs' residence.

24. The Plaintiffs were unaware that Porter would convey and sell their property to an unknown third party.

25. Porter never issued any disclosures required by TILA and HOEPA to the Plaintiffs.

26. The Defendant, Harlan Hanbrough, hereinafter "Hanbrough", purchased the Plaintiffs' home from Porter on or about November 14, 2006.

27. The Plaintiffs were always owners in possession of the subject premises.

28. Plaintiffs' presence should have put Hanbrough on notice that they may have had an equitable interest in the premises.

29. Due diligence on behalf of Hanbrough, Aurora and MERS would have disclosed Plaintiffs' equitable interest in their home.

30. The Plaintiffs were unaware of the sale of their home from Porter to Hanbrough.

31. Plaintiffs did not consent to the sale of their home to Hanbrough.

32. The address for Steve Hanbrough is 9905 S. Commercial Avenue, Chicago, IL 60617.

33. Porter issued a Warranty Deed to Hanbrough.  The Warranty Deed was recorded on December 1, 2006 as document number 0633522008 (Exhibit "G")

34. The Defendant, Mortgage Electronic Registration Systems, Inc., hereinafter "MERS".

35. MERS issued a $135,000.00 First Mortgage to Hanbrough.  The First Mortgage was recorded on December 1, 2006 as document number 0633522009 (Exhibit "H").

36. The Defendant, MERS is a Virginia Company which performs business in Illinois.

37. The address for MERS is 1595 Spring Hills Road, Suite 310, Vienna, VA 22182.

38. Due diligence on behalf of MERS would have disclosed Plaintiffs' equitable interest in their home.

39. The Defendant, Aurora Loan Services, hereinafter, "Aurora", is a Colorado Company which performs business in Illinois.

4

40. The address for Aurora Loan Services is, 10350 Park Meadows Drive, Littleton, CO 80124.

41. Aurora Loan Services issued a $27,000.00 Second Mortgage to Hanbrough for the Plaintiffs' property.   The Second Mortgage was recorded on December 1, 2006 as document number 0633522010 (Exhibit "I").

42. Due diligence on behalf of Aurora would have disclosed Plaintiffs' equitable interest in their home.

43. After his purchase of the home in November of 2006, Hanbrough demanded that the Plaintiffs pay him rent in the amount of $1,400.00 per month.

44. The Plaintiffs never entered into a lease agreement with Hanbrough.

45. The Plaintiffs, believing that it was unfair and inequitable to pay rent to Hanbrough for a home that they owned and did not sell to Hanbrough; refused to pay rent.

46. In 2008, Hanbrough filed a Forcible Entry and Detainer action against the Plaintiffs as case number 08 M1 701291.

47. On January 30, 2008, Hanbrough secured an Ex Parte Order For Possession to the Plaintiffs' residence.  Hanbrough also secured a money judgment against the Plaintiffs in the amount of $4,350.00.

48. Hanbrough never issued any disclosures required by TILA and HOEPA to the Plaintiffs.

49. Plaintiffs hereby demands that the loans issued by Aurora and MERS to Hanbrough be rescinded as Hanbrough was not a bona fide purchaser and for his violations of the TILA and HOEPA acts.

50. Plaintiffs seek a rescission of the $5,100.00 loan, rescission of the Aurora and MERS mortgages, to Quiet Title against all Defendants based on fraud as well as violations of the TILA and HOEPA acts.

51. No attempt was made by Porter or Hanbrough to comply with TILA or HOEPA.

52. Plaintiffs were not given financial disclosures (15 U.S.C. §1638 and 12 C.F.R. §§226.17-18), the special advances disclosures required by HOEPA (15 U.S.C. §1639 and 12 C.F.R. §226.32(c), or notice of their right to cancel the loan (15 U.S.C. §1635 and 12 C.F.R. §226.23).

**COUNT I**
**TILA & HOEPA**

53. Plaintiffs incorporate paragraphs 1-52 into this paragraph.

54. This claim is against Porter and Hanbrough only.

55. Because the Transaction was secured by Plaintiffs' home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23.

56. Porter failed to provide required disclosure of the Plaintiffs' right to cancel within three days, in violation of 15 U.S.C. §1635 and 12C.F.R. §226.23, or the required financial disclosures, in violation of 15 U.S.C. §1637 and 12 C.F.R. §226.18, or the advance disclosures required by HOEPA.

57. Plaintiffs elect to rescind the loan.

58. Plaintiffs will send Notice of Rescission to the Defendants.

59. 15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this
Section, in addition to rescission the court may award relief under section
1640 of this title for violation of this subchapter not relating to the right to
Rescind.**

**WHEREFORE**, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and
against Defendants for:

    a. A judgment voiding Hanbrough's mortgages and Warranty Deed, capable of
recordation in the public records, and binding on all Defendants.

    b. Statutory damages, including the damages prescribed for violation of HOEPA,
for the underlying disclosures violations;

    c. If appropriate, statutory damages, including the damages prescribed for
violation of HOEPA, for failure to rescind, and

    d. Attorney's fees, litigation expenses and costs.

    e. Such other or further relief as the Court deems appropriate.

## COUNT II
### BREACH OF FIDUCIARY DUTY

60. Plaintiffs incorporate paragraphs 1-52.

61. This claim is against Porter only.

62. Porter violated his fiduciary duty as Plaintiffs' "lender" by:

    a. Acting as such although not licensed to do so

    b. Arranging an unnecessarily expensive loan with a related party;

    c. On information and belief, failing to make diligent efforts to obtain financing
elsewhere without disclosure of the fact;

7

    d.   Arranging a loan made in violation of the HOEPA without disclosures of the fact;

    e.   Arranging a loan made in violation of the Illinois High Risk Home Loan Act without disclosures of the fact.

63. Plaintiffs were damaged as a result

64. Defendant acted willfully and knowingly.

**WHEREFORE**, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and against Defendant Porter for:

    a.   Compensatory and punitive damages;

    b.   An accounting of profits;

    c.   Costs; and

    d.   Such other or further relief as the Court deems appropriate.

## COUNT III
## EQUITIBLE MORTGAGE
## SUIT TO QUIET TITLE

65. Plaintiffs incorporate paragraphs 1-52.

66. This claim is against Aurora, MERS and Hanbrough only.

67. The Deed transferring title from Plaintiffs to Porter and from Porter to Hanbrough, though formally conveying title, should be properly construed and creating an equitable mortgage.

68. Plaintiffs' conveyance to Porter was intended as security in the nature of a mortgage pursuant to 735 ILCS 5/15-1207(c) and (e).

69. Consideration of the above factors warrants the court to construe the deed transfer from Plaintiffs to Porter and from Porter to Hanbrough as the granting equitable mortgages, thereby voiding the Deed transfers.

70. In addition, Porter's conveyance of the home to Hanbrough is voidable because the seller cannot convey better title than the seller possesses and, here, Porter did not in fact own the Home but merely held an equitable mortgage interest therein, of which Aurora and MERS were on notice and, therefore, cannot obtain *bona fide* purchaser or lender status.

**WHEREFORE**, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and against all Defendants for:

a. A judgment voiding Hanbrough's mortgages and Warranty Deed, capable of recordation in the public records, and binding on all Defendants and

b. Attorney's fees, litigation expenses and costs.

c. Such other or further relief as the Court deems appropriate.

<u>COUNT IV</u>
**ILLINOIS CONSUMER FRAUD AND DECEPTVE BUSINESS PRACTICES ACT.**

71. Plaintiffs incorporates paragraphs 1-52.

72. Porter's conduct in fraudulently inducing Plaintiffs to collateralize their home for $5,100.00 and then sell to Hanbrough for $162,000.00 constituted an unfair or deceptive act or practice

within the meaning of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1.

9

73. Porter intended that Plaintiffs rely on their unfair or deceptive acts or practices when they fraudulently induced Plaintiffs to collateralize their home for $5,100.00.

74. Porter intentionally failed to disclose that the Property would be sold to a third party.

75. The deceptive acts of Porter as stated above occurred during a course of conduct that involved trade or commerce.

76. As a direct result of the unfair and deceptive acts or practices of Porter, Plaintiffs suffered actual economic damages in the amount of Plaintiffs' equity interest in the Property, in addition to the increase costs associated with rental of their property.

77. Since the sale of the Property to Hanbrough, as a direct and proximate result of Porter's fraudulent acts, Plaintiffs have lost their right to inhabit the home they had lived in for many years and lost their ability to repurchase the Property.

78. The unfair and deceptive acts or practices of Porter directly and proximately caused Plaintiffs' damages.

79. The unfair and deceptive acts of practices of Porter stated above offend the public policy of the State of Illinois.

80. The unfair and deceptive acts of practices of Porter as stated above are immoral, unethical, oppressive, and unscrupulous and cause substantial injury to consumers in Illinois.

81. Illinois has a clear public policy against the type of conduct by Porter in conspiring to strip the Property of Plaintiffs' equity.

82. This public policy is expressed in the Illinois Fairness in Lending Act, 815 ILCS 120.

83. Plaintiffs do not bring claims under the Illinois Fairness Lending Act because Porter did not represent a Financial Institution as defined in 815 ILCS 120/2.

84. Had Porter disclosed to Plaintiffs that the Property would be sold to a third party, Plaintiffs

would not have borrowed the $5,100.00 and collateralized their home.

85. As a direct and proximate result of the above violations of the Illinois Consumer Fraud and Deceptive Business Practice Act, Porter is liable to Plaintiffs in the sum of Plaintiffs actual economic damages in addition to reasonable attorney's fees and costs.

**WHEREFORE**, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and against Porter for:

    a.  Actual economic damages and

    b.  Attorney's fees, litigation expenses and costs.

    c.  Such other or further relief as the Court deems appropriate.

**<u>Count V</u>**
**Common Law Fraud**

86. Plaintiffs incorporate paragraphs 1-52.

87. Porter made false statements of material fact to Plaintiffs that the property would not be sold.

88. Porter made misrepresentations of material fact by failing to disclose to Plaintiffs that they would be stripped of the equity they had in their Property.

89. Porter knew that the statements made to Plaintiffs as stated above were false and he knew that he would sell the property to a third party and that the Plaintiffs would not be able to repurchase the property.

90. Porter intended that the statements and material omissions would induce Plaintiffs to

collateralize their home and issue a Quit Claim Deed to Porter.

91. Plaintiffs in fact relied on the misrepresentations and material omissions made by Porter.

92. The misrepresentations and omissions of Porter to Plaintiffs were material in that Plaintiffs would have acted differently had they been aware of the true nature of the real estate transfer.

93. As a direct and proximately result of the fraudulent conduct of Porter, Plaintiffs suffered substantial economic damages in that they never received their equity interest in the property, they lost ownership of the Property, and they were forced to incur increased rental costs to Hanbrough.

**WTHEIREFORE**, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and against Defendants for:

 a. A judgment voiding Hanbrough's mortgages and Warranty Deed, capable of recordation in the public records, and binding on all Defendants.

 b. Statutory damages and actual damages and

 c. Attorney's fees, litigation expenses and costs.

 d. Such other or further relief as the Court deems appropriate.

_____
Carl B. Boyd    3-4-08

Starks & Boyd P.C.
Carl B. Boyd #6206607
11528 S. Halsted
Chicago, IL 60628
(773) 995-7900

**JURY DEMAND**

**Plaintiffs demands trial by jury**

_____
Carl B. Boyd    3-4-08

12

Promissory Note

$5,100.00                                                          June 29, 2004

FOR VALUE RECEIVED, the undersigned, Lilly Jones, of 7538 S. Wolcott, Chicago, IL 60620-5205 promises to pay to the order of Stevie Porter, at P.O. Box 9574, Naperville IL 60540 or such other place as the holder may designate in writing to the undersigned, the principal sum of "Five thousand one hundred dollars ($5,100.00)", together with interest thereon from date hereof until paid, at the rate of "Eighteen Percent (18%)" per annum as follows: "thirty six (36)" consecutive installments of interest, property taxes, homeowners insurance, maintance fees, and any other fees associated with this loan in the amount of **"One Hundred fifty dollars ($150.00)" on "the first day of each month" commencing August 1, 2004.  The entire principal amount shall be repaid on August 1, 2007.**

Payments shall be applied first to accrued interest, property taxes, homeowners insurance and the balance to principal.  In addition, any outstanding notes that are due on 7538 S. Wolcott Ave, Chicago, IL  60620-5205, shall be made payable to Stevie Porter for the next "thirty six (36) months" on the first day of each month commencing August 1, 2004. **Any payments that are received after the 10th date of any month will accure a late payment fee of $75.00 dollars.**

All or any part of the aforesaid principal sum may be prepaid at any time and from time to time without penalty.  Notwithstanding the foregoing, no such prepayment may be made prior to "August 1, 2004".

In the event of any default by the undersigned in the payment of principal or interest when due or in the event of the suspension of actual business, insolvency, assignment for the benefit of creditors, adjudication of bankruptcy, or appointment of a receiver, of or against the undersigned, the unpaid balance of the principal sum of this promissory note shall at the option of the holder become immediately due and payable and the amount then due shall accrue interest until payment at the rate of  eighteen percent (18%) per annum or the highest rate permitted by law, whichever is less.

Borrower and all other persons who may become liable for the payment hereof severally waive demand, presentment, protest, notice of dishonor or nonpayment, notice of protest, and any and all lack of diligence or delays in collection which may occur, and expressly consent and agree to each and any extension or postponement of time of payment hereof from time to time at or after maturity or other indulgence, and waive all notice thereof.

In case suit or action is instituted to collect this note, or any portion hereof, Borrower promises to pay such additional sum, as the court may adjudge reasonable, for attorneys' fees in said proceedings.

This note is made and executed under, and is in all respects governed by, the laws of the State of Illinios.


_____

Lilly Jones

Exhibit "A"



# SECURITY AGREEMENT

THIS SECURITY AGREEMENT ("Agreement") is made and effective this June 29, 2004, by and between Lilly Jones ("Borrower"), and Stevie Porter ("Secured Party").

Borrower is in the debt of Secured Party.

Borrower desires to give, and Secured Party desires to receive, a security interest in certain tangible personal property of Borrower to secure such debt.

NOW, THEREFORE, Secured Party and Borrower agree as follows:

1. **Definitions.**
A. "Collateral": The following described tangible, personal property of Borrower: (i) 7538 S. Wolcott Ave, Chicago, IL 60620-5205; and (ii) all additions and substitutions to or for the items referred to in Section 1.(A) (i) above, and all proceeds therefrom. Also, if the Collateral is inventory or equipment, any after acquired inventory or equipment shall also be considered Collateral.

B. "Obligation": All of the interest, principal and other amounts payable under that certain promissory note dated June 29, 2004, payable by Borrower to Secured Party for "Five Thousand one hundred dollars ($5,100.00)", bearing interest at a rate of "eighteen percent (18%)" per annum, a copy of which is attached hereto as Exhibit A.

2. **Security Interest.**
Borrower hereby grants to Secured Party a security interest in the Collateral in order to secure payment of the Obligation.

3. **Books and Records; Inspection.**
Borrower shall keep and maintain, at its expense, complete records of the Collateral. Secured Party shall have the right at any time and from time to time, without notice, to call at Borrower's place of business during normal business hours to inspect the Collateral and to inspect the correspondence, books, and records of Borrower relating to the Collateral.

4. **Representations and Warranties of Borrower.**
Borrower represents and warrants to Secured Party that, with respect to the Collateral, Borrower possesses and shall possess at all times while this Security Agreement is in effect, full, complete and unencumbered title to such goods, subject only to Secured Party's security interest hereunder, and liens, if any, for current taxes, assessments and other governmental charges are not delinquent.

5. **Covenants of Borrower.**
The Borrower agrees and covenants with Secured Party that:
A. The Collateral shall be kept at 7538 S. Wolcott Ave, Chicago, IL 60620-5205, and Borrower shall not change the location of the Collateral without the prior written consent of Secured Party.

B. Borrower shall not at any time cause or suffer any part of the Collateral, or any interest in any of Collateral to be subject to any Security Interest other than that of Secured Party.

C. Borrower shall defend the Collateral against the claims and demands of all persons other than Secured Party.

D. Borrower shall at all times promptly pay and discharge, at Borrower's expense, all taxes, assessments and other governmental charges which constitute or may become liens on the Collateral.

E. At the request of Secured Party, at any time and from time to time, Borrower shall


Exhibit "B"



1 of 3

Page 1 of 3

execute such financing statements and other documents, pay such filing, recording and other fees, and do or cause to be done such other acts or things as Secured Party deems reasonably necessary to establish, perfect, and continue its security interest hereunder.

F.  Borrower shall pay all costs, expenses, charges and other obligations, including, without limitation, reasonable attorneys' fees, suffered or incurred by Secured Party to protect, preserve, maintain and obtain possession of or title to the Collateral, to perfect, protect, preserve and maintain the security interest granted by this Security Agreement, and to enforce or assert any one or more of its rights, powers, remedies and defenses under this Security Agreement.

6.  **Events of Default**.
Borrower shall be in default under this Security Agreement if Borrower fails timely to observe and perform any covenants, conditions or agreements required to be observed or performed by Borrower under this Security Agreement, or if Borrower defaults upon any material promise in the obligation.

7.  **Remedies upon Event of Default**.
At any time upon or following the occurrence of one or more of the events of default under Section 6 hereof, Secured Party may, at its option, assert or avail itself of any one or more of the rights, powers, remedies and defenses conferred upon Secured Party under the Uniform Commercial Code and other laws of the State of Illinois, which laws shall generally govern the construction and interpretation of this Agreement, or assert or avail itself of any one or more of the rights, powers, remedies and defenses conferred upon Secured Party under any other appropriate law or regulation, whether federal or state.

8.  **Application of Proceeds**.
Any and all proceeds resulting from the disposition of all or any part of the Collateral following the occurrence of one or more events of default shall be applied to pay and provide for the Obligations of Borrower to Secured Party, with any balance remaining to be paid to Borrower or its successors and assigns, as their respective interests may appear.

9.  **Notices**.
Any notice required by this Agreement or given in connection with it, shall be in writing and shall be given to the appropriate party by personal delivery or by certified mail, postage prepaid, or recognized overnight delivery services.

>   If to Borrower:
>
>   Lilly Jones
>   7538 S. Wolcott Ave
>   Chicago, IL 60620-5205
>
>   If to Secured Party:
>
>   Stevie Porter
>   P.O. Box 9574
>   Naperville, IL 60540

10.  **Severability**.
The invalidity or unenforceability of any provision in this Agreement shall not cause any other provision to be invalid or unenforceable.

11.  **Final Agreement**.
This Agreement constitutes the final agreement and understanding between the parties on the subject matter hereof and supersedes all prior understandings or agreements whether oral or written.  This Agreement may be modified only by a further writing that is duly executed by both parties.

12.  **Headings**.

2 of 3

Headings used in this Agreement are provided for convenience only and shall not be used to construe meaning or intent.

IN WITNESS WHEREOF, Borrower and Secured Party have executed this Security Agreement on the date first above written.


_____       _____
Lilly Jones                          Stevie Porter

3 of 3

## GENERAL POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that I

    Lilly Jones
    7538 S. Wolcott
    Chicago, IL 60620-5205

have made, named, constituted and appointed, and by these presents do make, name, constitute and appoint

    Stevie Porter
    P.O. Box 9574
    NapervilleIL 60540

my true and lawful attorney for and in my name, place, and stead, with full power and authority to do and perform all and every act and thing whatsoever, necessary, requisite or proper to be done, as fully, to all intents and purposes, as I might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that Stevie Porter shall lawfully do or cause to be done by virtue hereof.

This General Power of Attorney shall remain in effect for a period of twelve (12) months from the date hereof.

If this General Power of Attorney is terminated by operation of law, any person acting in reliance upon it without notice of such termination shall be held harmless.

IN WITNESS WHEREOF, this General Power of Attorney has been executed by Lilly Jones on _____ at _____.


    _____
    Lilly Jones


State of _____ )
                              ) ss
County of _____ )

On this _____, before me personally appeared Lilly Jones, to me known to be the person described in and who executed the foregoing instrument and acknowledged to me that Lilly Jones executed the same as her free act and deed.


_____
Notary Public

Exhibit "C"



# COOK COUNTY RECORDER OF DEEDS
## EUGENE "GENE" MOORE

[Back One Page]

**Result For:[0420848139]**

| Document No. | Executed | Recorded | Document Type | Case No. | Amount |
|---|---|---|---|---|---|
| 0420848139 | 07/01/2004 | 07/26/2004 | POWER OF ATTORNEY | | $0.00 |

**Legal Description**

Secion-Township: 30-38-14    Subdiv-Condo: ENGLEFIELD #1

Lot #: 13    Block #: 9 Part of Lot:

**Property Description**

20-30-401-0032-0000 UPIN

**Grantor(s)**

Name: **JONES LILLY** Trust Number:-

**Grantee(s)**

Name: **PORTER STEVIE** Trust Number:-

**Prior Document**

Home Page
Disclaimer
Copyright
Privacy Policy
FAQ
Search Menu

Grantor / Grantee
Document Number
Legal Search
PIN Search
Trust Number
Subdivision Search

Forms

View Purchased
Documents

*Exhibit "D"*

### Quitclaim Deed

This Quitclaim Deed made June 29, 2004, by
    Lilly Jones ("Transferor")
    7538 S. Wolcott
    Chicago, IL 60620-5205

to:
    Stevie Porter ("Transferee")
    P.O. Box 9574
    NapervilleIL 60540

Transferor, in consideration of One Dollar and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, remises, releases, and forever quitclaims to Transferee all of the interest of Transferor, if any, in an to that real property located in the County of Cook, and State of Illinois, and more certainly described as follows:  As per title.

To have and to hold, all and singular the described property, together with the tenements, hereditaments, and appurtenances belonging to such property, or in anywise appertaining, and the rents, issues, and profits of such property to Transferee, and Transferee's heirs and assigns forever.

IN WITNESS WHEREOF, Transferor has executed this Quitclaim Deed on the date first above written.

_____
Lilly Jones

Exhibit "E"

### Acknowledgment

State of _____ )
                     ) ss
County of _____ )

On this June 29, 2004, before me personally appeared _____, to me know to be the person described in and who executed the foregoing Quitclaim Deed and



# COOK COUNTY RECORDER OF DEEDS
## EUGENE "GENE" MOORE

Home Page
Bookmark
Locations
Recording Fees
What's New
FAQ
Search Menu

Grantor / Grantee
Document Number
Legal Search
PIN Search
Trust Number
Subdivision Search

Forms

View Purchased
Documents

[Back One Page]

**Result For:[0420848140]**

| Document No. | Executed | Recorded | Document Type | Case No. | Amount |
|---|---|---|---|---|---|
| 0420848140 | 06/29/2004 | 07/26/2004 | QUIT CLAIM DEED | | $0.00 |

**Legal Description**

Section-Township: 30-38-14          Subdiv-Condo: ENGLEFIELD # 1

Lot #: 13                    Block #: 9 Part of Lot:

**Property Description**

20-30-401-032-0000 .UPIN

**Grantor(s)**

Name: **JONES LILLY** Trust Number: -

**Grantee(s)**

Name: **PORTER STEVIE** Trust Number: -

**Prior Document**

Exhibit "F"



http://www.ccrd.info/CCRD/controller?commandflag=getDetails&optflag=DetailsCommand&county=il031&userid=null&userC...    3/4/2008

Page 1 of 2

# COOK COUNTY RECORDER OF DEEDS

## EUGENE "GENE" MOORE

HOME PAGE
PROGRAM
DISCLAIMER
LOGIN / HELP

INTENDED USE
FEE SCHEDULE
WHAT'S NEW
FAQ
SEARCH MENU

Grantor / Grantee
Document Number
Legal Search
PIN Search
Trust Number
Subdivision Search

Forms

View Purchased
Documents

[Back One Page]

**Result For:[0633522008]**

| Document No. | Executed | Recorded | Document Type | Case No. | Amount |
|---|---|---|---|---|---|
| 0633522008 | 11/14/2006 | 12/01/2006 | WARRANTY DEED | | $180,000.00 |

## Legal Description

Secion-Township: 30-38-14    SubDiv-Condo: ENGLEFIELD # 1

Lot #: 13    Block #: 9 Part of Lot:

## Property Description

20-30-401-032-0000 UPIN

**Grantor(s)**

Name: **PORTER STEVIE**    Trust Number:-

**Grantee(s)**

Name: **HANBROUGH HARLAN**    Trust Number:-

**Prior Document**



*Exhibit "G"*

# COOK COUNTY RECORDER OF DEEDS
## EUGENE "GENE" MOORE

HOME PAGE
BROCHURE
FOX ABOUT
PURCHASING LINKS
FAL SCHEDULE
WHAT'S NEW
FAQ
SEARCH MENU

Grantor / Grantee
Document Number
Legal Search
PIN Search
Trust Number
Subdivision Search
Forms
View Purchased Documents

[Back One Page]

**Result For:(0633522009)**

| Document No. | Executed | Recorded | Document Type | Case No. | Amount |
|---|---|---|---|---|---|
| 0633522009 | 11/14/2006 | 12/01/2006 | MORTGAGE | | $135,000.00 |

**Legal Description**

Secion-Township: 30-38-14    Block #: 9 Part of Lot:    SubDiv-Condo: ENGLEFIELD #1

Lot #: 13

**Property Description**

20-30-401-032-0000 UPIN

| | |
|---|---|
| Grantor(s) | Name: **HANSBROUGH HARLAN** Trust Number:- |
| Grantee(s) | Name: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC** Trust Number:- |
| Prior Document | |



*Exhibit "H"*



http://www.ccrd.info//CCRD/controller?commandflag=getDetails&optflag=DetailsCommand&county=i1031&userid=null&userC...    3/4/2008



# COOK COUNTY RECORDER OF DEEDS
## EUGENE "GENE" MOORE

[Back One Page]

Home Page
Bookmark
Location
Recording Fees
What's New
FAQ
Send E-Mail

Grantor / Grantee
Document Number
Legal Search
PIN Search
Trust Number
Subdivision Search

Forms

View Purchased Documents

**Result For:[0633522010]**

| Document No. | Executed | Recorded | Document Type | Case No. | Amount |
|---|---|---|---|---|---|
| 063522010 | | 12/01/2006 | MORTGAGE | | $27,000.00 |

**Legal Description**

Secion-Township: 30-38-14    Subdiv-Condo: ENGLEFIELD #1

Lot #: 13    Block #: 9 Part of Lot:

**Property Description**

20-30-401-032-0000  UPIN

**Grantor(s)**

Name: **HANSBROUGH HARLAN**  Trust Number:-

**Grantee(s)**

Name: **AURORA LOAN SERV INC**  Trust Number:-

**Prior Document**

Exhibit "I"



http://www.ccrd.info/CCRD/controller?commandflag=getDetails&optflag=DetailsCommand&county=il031&userid=null&userC...    3/4/2008

Page 1 of 2